*In re* SOLICITUD DE LUGO BOUGAL Y ARRAIZA

*Número:* _____    *Resuelto:* 4 de febrero de 1982

## RESOLUCIÓN

Con fecha 21 de enero de 1982 los abogados Héctor Lugo Bougal y Fermín Baltazar Arraiza sometieron al Juez Presidente de este Tribunal, "en su carácter de Jefe de la Rama Judicial del Estado Libre Asociado de Puerto Rico", copia de una comunicación jurada el 12 de enero solicitando de la Oficina de la Administración de Tribunales "se sirva investigar y hacer las determinaciones que procedan con relación a la conducta del Honorable Juez Jorge Díaz Cruz, Juez Asociado del Tribunal Supremo de Puerto Rico, relativa a actuaciones dentro de su ministerio judicial".

Dicho escrito relaciona la participación e intervención del Juez Asociado Señor Díaz Cruz en determinados casos y se aduce que ello infringió cánones de ética judicial.

El Juez Presidente dio conocimiento inmediato de la solicitud a todos los jueces del Tribunal y luego la sometió formalmente a la reunión del pleno del 22 de enero. Habiendo los referidos abogados presentado, además, la solicitud de investigación ante el Administrador de los Tribunales, el Tribunal acordó requerir de aquél el traslado del asunto a éste por tratarse de una cuestión de la incumbencia del Tribunal. El Juez Asociado Señor Díaz Cruz, quien no intervino en la consideración del asunto, expresó su deseo de exponer por escrito al Tribunal unas observaciones al respecto, lo que le fue concedido. El

memorando que circuló el día 1ro de febrero se une a esta Resolución. Apéndice I, *infra.*

Comoquiera que los tres planteamientos sometidos habían sido objeto de consideración por el Tribunal en el pasado, nos referiremos a la acción que entonces tomó el Tribunal al respecto.

Primeramente aludiremos al caso señalado en el párrafo primero del escrito (*Ortiz Erazo* v. *Ortiz Erazo*, R-80-574). En nuestra Resolución de 19 de enero de 1981, se enmendó *nunc pro tunc* nuestra Resolución de 15 de enero de 1981, al advertir el error, cuatro días después, de no haberse hecho constar que el Juez Asociado Señor Díaz Cruz se había inhibido en la consideración del recurso, todo ello a pesar de que sobre la carátula del expediente aparece una nota en puño y letra del Juez Asociado Señor Martín que lee "El Juez Díaz Cruz inhibido". Se úne a este dictamen copia de las mencionadas resoluciones. Apéndices II y III, *infra.* A pesar de los términos claros y definitivos de nuestra Resolución enmendatoria de 19 de enero de 1981, el Lcdo. Fermín B. Arraiza, quien era abogado en aquel caso, y quien ahora suscribe la solicitud objeto del presente dictamen, presentó un escrito titulado "Escrito de Jurisdicción, etc.", en el que pedía que el Juez Señor Díaz Cruz explicara la razón de su inhibición, lo que motivó nuestra Resolución de 29 de enero de 1981 explicativa del incidente de inhibición. Se une copia de dicha resolución a este dictamen. Apéndice IV, *infra.* El licenciado Arraiza insistió entonces en tres escritos adicionales sobre el incidente de la inhibición, los que fueron declarados sin lugar, siendo nuestra última resolución al respecto en 26 de junio de 1981. En vista de lo expuesto, este primer planteamiento carece de mérito alguno.

El segundo planteamiento cuestiona la participación del Juez Señor Díaz Cruz en la consideración del recurso de apelación Cr-77-41, *Pueblo* v. *Casiano Vélez*, 106 D.P.R. 464 (1977). Este planteamiento fue objeto de nuestra

consideración y resuelto por nuestra resolución de 16 de marzo de 1978, que se une para que forme parte de este dictamen. Apéndice V, *infra.* Ver 106 D.P.R. 468. El referido caso criminal fue argumentado ante este Tribunal en vista celebrada al efecto por el Lcdo. Héctor Lugo Bougal sin que éste solicitase la inhibición del Juez Señor Díaz Cruz. Cuatro meses después de la vista oral y de dictada la sentencia, se planteó ante este Tribunal por el Lcdo. Luis Abreu Elías el asunto sobre la participación del Juez Señor Díaz Cruz en el referido caso. El Tribunal, sin la intervención del Juez Señor Díaz Cruz, volvió a considerar la cuestión planteada en dicho caso y unánimemente determinó que la participación previa del referido 'magistrado no había vulnerado el debido proceso de ley. El licenciado Lugo Bougal reproduce la misma cuestión resuelta casi cuatro años atrás. Es evidente que el planteamiento que ahora se reproduce carece de méritos.

Nos sorprende la actuación de los abogados Arraiza y Lugo Bougal al promover nuevamente estos asuntos.

En el tercer párrafo se solicita se investigue si el Juez Señor Díaz Cruz, durante su incumbencia como Juez Asociado de este Tribunal, ha poseído bonos de la Autoridad de las Fuentes Fluviales de Puerto Rico y si ha intervenido en asuntos judiciales en que una de las partes ha sido dicha Autoridad. El Juez Señor Díaz Cruz posee bonos en corporaciones públicas, incluso de la Autoridad de las Fuentes Fluviales, hecho que hizo constar al Pleno de este Tribunal desde el inicio de su incumbencia. Entendimos entonces, como ahora, que dada la naturaleza de la inversión del Juez Señor Díaz Cruz, la tenencia de bonos emitidos por la Autoridad de las Fuentes Fluviales, su intervención en litigios que envuelven reclamaciones a favor o en contra de dicha corporación pública no viola los Cánones de Ética Judicial de Puerto Rico. Nos explicamos.

En Puerto Rico no existe norma específica sobre la intervención o descalificación de jueces por intereses

financieros, como existe en la jurisdicción federal. El Canon XXI de los de Ética Judicial de Puerto Rico establece lo siguiente:

> El Juez no debe utilizar su poder o el prestigio de su cargo para fomentar el éxito de negocios privados o para su beneficio personal. Tampoco debe tener relaciones de negocios que en el curso normal de acontecimientos razonablemente previsibles puedan poner sus intereses personales en conflicto con el cumplimiento de sus deberes. La participación de cualquier Juez en negocios privados que no aparejen tales conflictos de intereses debe realizarse con la mayor cautela y prudencia a fin de evitar malas impresiones o la apariencia de conducta impropia. El Juez debe evitar particularmente dar base para la sospecha razonable de que pueda estar utilizando las prerrogativas o influencias de su cargo para su beneficio personal o el de otras personas.
>
> El Juez no debe realizar gestión alguna ni permitir el uso de su nombre para recolectar fondos, no importa el propósito o destino de éstos. Dicha prohibición incluye solicitar donativos o aportaciones de personas o entidades para el Colegio de Abogados de Puerto Rico o para organizaciones cívicas, benéficas, profesionales o de cualquier otra índole.

Examinado dicho canon, ciertamente la tenencia de bonos en una corporación pública no constituye una participación en negocios privados, ni requiere la inhibición de un juez en la situación planteada.

En la esfera federal existen normas específicas sobre la no intervención de un juez, entre otras, por poseer intereses financieros en los negocios de una de las partes. 28 U.S.C. sec. 455. Estas normas fueron adoptadas como resultado de las imputaciones contra la integridad e imparcialidad de jueces, lo cual movió a la creación de comités para investigar la ley entonces vigente a nivel federal sobre recusación judicial: *Disqualification of Federal Judges— The Need for Better Guidelines*, 13 Wake Forest L. Rev. 353 (1977). A tenor de lo anterior, la sec. 455 (28 U.S.C.), fue enmendada en 1974 para atemperarla a los Cánones de Ética Judicial de la Asociación Americana de Abogados.

La norma general en tal esfera es que un juez no deberá intervenir en un caso si tiene un interés financiero o de otra índole en la materia en controversia, que pudiera afectarse sustancialmente con los resultados del pleito. No todo tipo de interés financiero es motivo para la inhibición de un juez. Una de las excepciones a la norma general federal es la que trata de las inversiones de un juez en valores gubernamentales. Cuando se trate de esta situación rige la norma a los efectos de que se entenderá que existe un interés financiero solamente si el resultado del pleito puede afectar sustancialmente el valor de las inversiones. ([1]).

La Asociación Americana de Abogados, en su revisión del Código de Ética Judicial de 1979, mantiene y sugiere normas similares a la federal para la no intervención de jueces. Sobre la discusión y alcance de estas normas, véanse: E. G. Burg, *Meeting the Challenge: Rethinking Judicial Disqualification*, 69 Cal. L. Rev. 1445 (1981); Note, *Disqualification of Judges and Justices in the Federal Courts*, 86 Harvard L. Rev. 736 (1973); J. P. Frank,

---

([1]) 28 U.S.C. sec. 455. *"Disqualification of justice, judge, magistrate, or referee in bankruptcy*

(a) .　　　.　　　.　　　.　　　.　　　.　　　.　　　.

(b) *He shall also disqualify himself in the following circumstances:*

.　　　.　　　.　　　.　　　.　　　.　　　.　　　.

(4) *He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;*

.　　　.　　　.　　　.　　　.　　　.　　　.　　　.

(d) *For the purposes of this section the following words or phrases shall have the meaning indicated:*

.　　　.　　　.　　　.　　　.　　　.　　　.　　　.

(4) *'financial interest' means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:*

.　　　.　　　.　　　.　　　.　　　.　　　.　　　.

(iv) *Ownership of government securities is a 'financial interest' in the issuer only if the outcome of the proceeding could substantially affect the value of the securities."*

*Commentary on Disqualification of Judges—Canon 3 C,*
1972 Utah L. Rev. 377 (1972); G. L. Karl, *Disqualification
of Federal District Court Judges for Bias or Prejudice:
Problems, Problematic Proposals, and a Proposed Proce-
dure,* 46 Albany L. Rev. 229 (1981); Comment, *Disqual-
ification of Federal Judges—The Need for Better Guide-
lines,* supra; S. T. Jacobson, *The Elusive Appearance of
Propriety: Judicial Disqualification Under Section 455,* 25
De Paul L. Rev. 104 (1975); P. J. Ryan, *Judicial Disqual-
ification Based on a Conflict of Interest,* 12 Loy. L.A.L.
Rev. 1057 (1979); T. J. Lacy, *Disqualification of Federal
Judges: Statutory Right to Recusal and the 1974 Amend-
ments to Title 28,* 31 Southwestern L.J. 887 (1977).

Examinado lo anterior, y aun aplicando por analogía
las normas de otros foros sobre no intervención de jueces
por intereses financieros en los negocios de una de las
partes, la inhibición del Juez Asociado Señor Díaz Cruz en
casos de la Autoridad de las Fuentes Fluviales no es
requerida.

En evitación de planteamientos similares que empañen
la integridad de nuestros magistrados por ausencia de
normas más definidas en nuestra jurisdicción sobre la
descalificación de jueces por poseer interés financiero en
un caso o los negocios de una de las partes y en otras
situaciones análogas, procede que se inicien estudios para
la adopción en Puerto Rico de las normas que se estimaren
procedentes. A tal fin, se reinstala el Comité nombrado por
este Tribunal mediante acuerdo de 17 de mayo de 1974,
compuesto por el profesor de Derecho Raúl Serrano Geyls,
el Lcdo. Jaime Fuster y el Juez Superior Abner Limardo
para revisar los Cánones de Ética Judicial de Puerto Rico
a la luz de las últimas tendencias y desarrollos en este
campo, estudiar los problemas jurisdiccionales y de pro-
cedimiento correspondientes, los cuales no se prejuzgan en
esta resolución, y oportunamente someter a este Tribunal
las recomendaciones de rigor.

En virtud de lo expuesto precedentemente, no ha lugar a proveer ulteriores procedimientos en cuanto a la solicitud de los licenciados Héctor Lugo Bougal y Fermín Baltazar Arraiza.

Previa certificación de la señora Secretaria, deberá notificarse al Juez Asociado Señor Díaz Cruz y a los abogados Héctor Lugo Bougal y Fermín Baltazar Arraiza con copia de esta Resolución. Notifíquese, además, al Colegio de Abogados de Puerto Rico para su publicación.

Lo acordó el Tribunal y certifica la señora Secretaria General. El Juez Asociado Señor Díaz Cruz, salvo el memorando que sometiera el 1ro de febrero de 1982, no intervino ni participó en la deliberación y disposición de este asunto.

(*Fdo.*) Lady Alfonso de Cumpiano

*Secretaria*

## APÉNDICE I

### MEMORANDO

Se pide a este Tribunal por los abogados Héctor Lugo Bougal y Fermín B. Arraiza que investigue y haga determinaciones sobre actuaciones judiciales de uno de sus jueces. Consideramos en orden las siguientes observaciones:

1. Respecto a mi alegada participación en el caso de *Ortiz Erazo* v. *Ortiz Erazo*, R-80-574, la resolución de 15 de enero de 1981 emitida en dicho pleito fue enmendada *nunc pro tunc* cuatro días más tarde para subsanar una omisión en su texto, y reflejar el hecho real que el Juez Díaz Cruz se había inhibido desde el principio y que no tuvo participación en la decisión. Reiterada esta verdad al Sr. Arraiza en múltiples rechazos de sus mociones de reconsideración, su insistencia no es más que imputación de falsedad y encubrimiento a este Tribunal.

2. En cuanto a la queja y planteamiento ético referente a la tramitación y decisión del recurso de apelación Núm. Cr-77-41 del señor Casiano Vélez —cuyo mismo plantea-

miento fue hecho entonces por el Lic. Luis F. Abreu Elías, uno de sus abogados— este Tribunal lo evaluó conjuntamente con las otras cuestiones legales allí planteadas y concluyó mediante resolución de 16 de marzo de 1978, que la participación del Juez Díaz Cruz no lesionó el debido procedimiento de ley. Mi contacto con este caso cuando familiares del acusado me visitaron a principios de 1973 fue fugaz pues desde un principio les informé que no podía aceptar la representación, hallándome en proceso de cerrar mi bufete para ocupar la posición de Juez Asociado de este Tribunal. Me pidieron les sugiriera entonces otro abogado, y les mencioné entre otros, al Lic. Héctor Lugo Bougal. Cuando pasados cinco años formé tribunal para oír argumento oral en apelación, la previa lectura de alegatos no había relacionado en modo alguno el caso con la visita de familiares del acusado, antes dicha. Ignoro los motivos del abogado defensor Lic. Lugo para no haber advertido al Tribunal en ese momento de lo que consideraba participación impropia de uno de sus integrantes. De la breve entrevista con parientes del acusado no recuerdo dato alguno que pueda vincularla con los hechos discutidos en la vista oral.

3. Con referencia a mi inversión en bonos de corporaciones públicas —a diferencia de acciones— tal hecho fue informado al Tribunal desde mi llegada a este cuerpo y en vista de la naturaleza de la inversión, el Tribunal estimó que este factor no era motivo de inhibición; criterio en armonía con el Canon XXI de Ética Judicial de 1977 y Canon 5C del Código de Conducta Judicial ABA de 1979. No puede haber en esta inversión insignificante más apariencia de parcialidad que la concebible de nuestra participación en casos en que es parte el Gobierno que fija y paga el salario de los jueces. Ni en uno ni en otro caso hay interés personal en riesgo.

Mi tenencia de bonos de inversión de corporaciones públicas, parte infinitesimal de su pasivo, no inclina mi

criterio, como tampoco me insta a disuadir mi esposa del cambio a gas como combustible alterno en nuestro hogar. Al votar o al inhibirme de participación en los casos en que he de emitir una decisión, siempre he guardado lealtad a mi recta consciencia y a la disciplina judicial. Hecha la decisión queda en mi ánimo la paz íntima que sólo conoce el hombre justo.

(*Fdo.*) Jorge Díaz Cruz

*Juez Asociado*

## APÉNDICE II

### RESOLUCIÓN

San Juan, Puerto Rico, a 15 de enero de 1981

A la solicitud de revisión, no ha lugar.

Lo acordó el Tribunal y certifica el señor Secretario. El Juez Asociado Señor Rigau no intervino.

(*Fdo.*) Ernesto L. Chiesa

*Secretario*

## APÉNDICE III

### RESOLUCIÓN

San Juan, Puerto Rico, a 19 de enero de 1981

Se enmienda *Nunc Pro Tunc* nuestra resolución de 15 de enero de 1981 para hacer constar que el Juez Asociado Senor Díaz Cruz se inhibió.

Lo acordó el Tribunal y certifica el señor Secretario.

(*Fdo.*) Ernesto L. Chiesa

*Secretario*

## APÉNDICE IV

### RESOLUCIÓN

San Juan, Puerto Rico, a 29 de enero de 1981

A los escritos de los interventores-recurrentes titulados

"Petición Perentoria de Reconsideración y Solicitud de Audiencia" y "Moción en auxilio de jurisdicción sobre retención de Mandato" no ha lugar.

Al escrito titulado "Petición de Orden en Auxilio de Jurisdicción sobre 'Enmienda *Nunc Pro Tunc*' respecto a la inhibición del Juez Asociado Señor Díaz Cruz", no ha lugar. El Juez Asociado Señor Díaz Cruz se inhibió desde un principio y no ha participado en forma alguna en la consideración de este recurso. La enmienda *nunc pro tunc* corrigió la omisión de referencia a su inhibición que debió insertarse en nuestra Resolución de 15 de enero de 1981.

Lo acordó el Tribunal y certifica el señor Secretario. El Juez Asociado Señor Rigau no intervino. El Juez Asociado Señor Díaz Cruz se inhibió.

(*Fdo.*) Ernesto L. Chiesa
*Secretario*

## APÉNDICE V

### RESOLUCIÓN

San Juan, Puerto Rico, a 16 de marzo de 1978

Pasados cuatro meses de haberse celebrado la vista oral y haberse dictado sentencia confirmatoria en el caso de epígrafe, en escrito radicado el 13 de marzo de 1978, el apelante José E. Casiano Vélez solicita que se le absuelva por haber participado en la decisión el Juez Asociado Señor Díaz Cruz. Funda su petición en una declaración jurada de su primo Nelson Meléndez Casiano quien afirma que el 13 de enero de 1973 visitó, en unión de otras personas, la oficina profesional del Lic. Jorge Díaz Cruz para solicitar ". . . sus servicios como abogado en un caso que se había presentado contra mi primo José Enrique Casiano Vélez y por el cual habían confiscado mi carro."

La entrevista que se alega ". . . duró como una hora" se llevó a efecto casi cinco años antes de la vista celebrada en el presente caso. Semanas después de la entrevista, el Lic.

Díaz Cruz fue designado a este Tribunal y juramentado el 16 de marzo de 1973. A pesar de que el magistrado ocupó su sitio en el estrado durante la vista pública celebrada el 17 de octubre de 1977 no se solicitó su inhibición por el abogado defensor Lic. Héctor Lugo Bougal.[1] Es razonable concluir que debido al transcurso del tiempo y al factor memoria, tanto el Juez Señor Díaz Cruz como el Lic. Lugo Bougal no estaban conscientes ni relacionaron dicha vista con el caso de autos. En el cúmulo de asuntos judiciales, visitas, investigaciones de innumerables casos, es explicable que un abogado en el ejercicio de una intensa práctica pueda olvidar detalles de los innumerables asuntos en que ha intervenido y no tenemos duda de que éste ha sido el caso.

A la luz de lo expuesto, y en consideración a que nuestra opinión [*sic*] y sentencia confirmatoria del 3 de noviembre de 1977 representa el criterio de un Tribunal colegiado, la participación del Juez Asociado Señor Díaz Cruz no infringió el debido proceso de ley.

No obstante hemos considerado nuevamente la cuestión central planteada por el apelante en su recurso de apelación y ratificamos la sentencia confirmatoria emitida el 3 de noviembre de 1977 por entender que las circunstancias del caso no justificaban que se identificara al acusado en una rueda de detenidos. Los hechos por los cuales se acusó al apelante ocurrieron después de las cinco y media de la tarde y la identificación se llevó a cabo unas horas después.

En *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969), establecimos que la forma más confiable para identificar a un sospechoso por un testigo que no lo conocía de antemano era mediante la confrontación en rueda de detenidos, pero

---

[1] En el escolio 4 de su escrito el apelante nos solicita vista oral para someter prueba demostrativa "de que luego el Hon. Jorge Díaz Cruz le solicita al Lcdo. Héctor Lugo Bougal que el continu[ara] con el caso." En virtud de los términos de la presente consideramos innecesaria la misma.

se reconoce que "[e]n ciertas ocasiones se puede dispensar de este requisito, como cuando la identificación se realiza poco tiempo después de ocurrido el acto delictivo, pues se reconoce que todavía está fresca en la memoria la imagen de la persona." *Pagán Hernández* v. *Alcaide,* 102 D.P.R. 101-105 (1974); *Bates* v. *United States,* 405 F.2d 1104 (D.C. Cir. 1968).

En *Norris* v. *Slayton,* 540 F.2d 1241 (4th Cir. 1976), se consignó: "No hay prohibición alguna en contra de observar un único sospechoso en una rueda de un solo detenido cuando tiene lugar poco después del alegado acto criminal, pues esa observación, en vez de producir una identificación errónea tiende bajo algunas circunstancias a asegurar la exactitud de la identificación."

Y como expresó el Juez Burger cuando pertenecía a la Corte de Apelaciones del Circuito del Distrito de Columbia, la identificación "en circunstancias como éstas fomenta los deseables objetivos de una identificación reciente y exacta, la cual, en algunos casos puede inducir a poner en libertad inmediatamente a un sospechoso inocente y a la misma vez permitir a la policía reanudar la búsqueda del criminal en fuga mientras el rastro está fresco." *Bates* v. *United States,* supra a la pág. 1106.

Si bien es verdad que algunos tribunales han establecido reglas estrictas en cuanto al tiempo que debe transcurrir entre el hecho delictivo y la confrontación para dispensar la celebración de una rueda de detenidos, la norma generalmente aceptada es que la confrontación debe ocurrir dentro de un tiempo razonable que no debe extenderse más allá de las 24 horas. *Stanley* v. *Cox,* 486 F.2d 48 (4th Cir. 1973); *Norris* v. *Slayton,* 540 F.2d 1241 (4th Cir. 1976); *People* v. *Hunt,* 568 P.2d 376 (Calif. 1977); *People* v. *Floyd,* 464 P.2d 64 (Calif. 1970); *People* v. *McKinley,* 355 N.E.2d 324 (Ill. App. 1976); Nota, *Due Process Considerations in Police Showup Practices,* 44 N.Y.U.L. Rev. 377 (1969).

La identificación llevada a cabo en este caso es confiable pues los testigos tuvieron la oportunidad de observar al acusado a corta distancia, y se lo presentaron pocas horas después de ocurridos los hechos cuando todavía estaba fresca en sus mentes la imagen de lo que habían visto. Si a esto unimos el hecho de que los testigos de cargo identificaron el automóvil en que viajaba el agresor como uno marca Falcon, convertible, color gris de capota negra y gomas de aro de magnesio y fue en vehículo que corresponde a esa descripción donde la policía vio poco después al apelante, no cabe duda de que la identificación es confiable.

En mérito de lo expuesto se ratifica la sentencia confirmatoria emitida el 3 de noviembre de 1977.

Lo acordó el Tribunal y certifica el Secretario. El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué están conformes con la determinación de que la participación del Juez Asociado Señor Díaz Cruz no lesionó el debido proceso de ley, pero se ratifican en el criterio expuesto en la opinión disidente de que en este caso debió utilizarse la rueda de detenidos en el proceso de identificación del apelante. Los Jueces Asociados Señores Rigau y Díaz Cruz no participaron.

(*Fdo.*) Ernesto L. Chiesa

*Secretario*

*In re:* Solicitud de investigación formulada por los abogados Héctor Lugo Bougal y Fermín Baltazar Arraiza.

## RESOLUCIÓN

San Juan, Puerto Rico, a 18 de febrero de 1982

Evaluamos la moción suscrita el 8 de febrero de 1982 por los abogados Héctor Lugo Bougal y Fermín Arraiza, con referencia a nuestra Resolución de 4 de febrero. En síntesis, éstos argumentan que este Tribunal, al resolver el escrito original presentado por ellos referente al Juez

Asociado Señor Díaz Cruz, infringió el debido proceso de ley por no haberles dado oportunidad de presentar prueba para sostener sus alegaciones.

Por las razones que a continuación exponemos, el señalamiento es inmeritorio, ya que la presentación de prueba para disponer de este asunto no era necesaria.

Sobre la alegada participación del Juez Díaz Cruz en el caso de *Ortiz Erazo* v. *Ortiz Erazo*, R-80-574, al Tribunal le consta que aquél no intervino ni en la consideración ni en la adjudicación de dicho caso. Así debió haberse hecho figurar, pero no advertimos el error hasta cuatro días más tarde cuando procedimos *motu proprio* a corregirlo mediante resolución aclaratoria *nunc pro tunc*.

En cuanto a la alegación sobre la participación del Juez Díaz Cruz en el caso de *Pueblo* v. *Casiano*, Cr-77-41, tampoco era menester la presentación de prueba. En nuestra Resolución de 16 de marzo de 1978 se dio por sentado lo alegado en la moción radicada por el licenciado Abreu Elías, y concluimos que el período de tiempo transcurrido —casi cuatro años— había hecho desvanecer el recuerdo que el Juez Díaz Cruz y el licenciado Lugo Bougal pudieran haber mantenido del asunto. Aun bajo el supuesto de que se hubiese perfeccionado un contrato de servicios profesionales remunerado subsistiría nuestra razón de decidir.

Una vez el Tribunal y el Juez Díaz Cruz fueron advertidos de la relación inicial de éste con el acusado Casiano se produjo el retiro total y absoluto de dicho magistrado en el caso, seguido por la decisión del Tribunal de evaluar otra vez la apelación sin la intervención del mencionado Juez. El Tribunal ponderó nuevamente los méritos del recurso de apelación tal y como si lo estuviese considerando por primera vez, e incluso amplió su discusión sobre la doctrina referente a la identificación del acusado y concluyó —con los criterios disidentes reiterados del Juez Presidente Señor Trías Monge y del Juez Asociado

Señor Irizarry Yunqué— que debía confirmar la sentencia apelada. El Tribunal unánimemente quedó entonces convencido, como lo reitera hoy, de que la participación del Juez Díaz Cruz no lesionó el debido proceso de ley. Así lo consignamos en nuestra Resolución de 16 de marzo de 1978.

En cuanto al tercer señalamiento de los abogados Arraiza y Lugo Bougal, reafirmamos nuestros pronunciamientos en la Resolución de 4 de febrero de 1982, en el sentido de que no existe disposición alguna en el Código de Ética Judicial aplicable a los jueces que poseen bonos de corporaciones públicas puertorriqueñas, y que aun bajo las normas de inhibición imperantes en la jurisdicción federal, éstos no impedían ni impiden que el Juez Asociado Señor Díaz Cruz intervenga en los litigios en que la Autoridad de Fuentes Fluviales fuere demandada. Aunque nuestro actual Código de Ética data de 1977 —hace poco más de cuatro años— a los fines de que la imagen de los jueces quede clara y limpia de toda duda, hemos reactivado una comisión de abogados para que haga los estudios y recomendaciones pertinentes sobre conflictos de intereses de los miembros de la Rama Judicial.

En virtud de lo anteriormente expuesto, y acogida la moción de los abogados Héctor Lugo Bougal y Fermín Arraiza como una moción de reconsideración a nuestra Resolución de 4 de febrero de 1982, no ha lugar.

Lo acordó el Tribunal y certifica la Secretaria General. El Juez Asociado Señor Díaz Cruz se inhibió.

(*Fdo.*) Lady Alfonso de Cumpiano
*Secretaria*